KING, P.J.,
for the court.
¶ 1. Robert E. Byrd was found guilty in the Circuit Court of Walthall County, Mississippi of the unlawful sale of cocaine. He was sentenced to a term of fifteen years in the custody of the Mississippi Department of Corrections, to serve the first eight years and the last seven years to be served on post-release supervision and ordered to pay a fine and other court costs. Aggrieved by his conviction, Byrd has appealed and raised the following issues:
I. Whether the trial court erred in allowing the identification of Byrd in the courtroom based on the pre-trial viewing of photographs of Byrd.
*732 II. Whether the verdict was against the weight and credibility of the evidence.
FACTS
¶ 2. On January 11, 2001, confidential informant Louis Pearley worked with Officer Arzetto Mark of the Walthall Tyler-town Narcotics Task Force to set up an “undercover buy” to purchase narcotics in the Walthall County area. Officers Chad McElveen and Brandon Bright participated by conducting surveillance of the “controlled buy.”
¶ 3. In preparation for the controlled buy, Pearley met with the officers at a pre-arranged location where he was searched. Officer McElveen put a body wire on Pearley and gave him forty dollars (money from Walthall Tylertown Task Force funds) to purchase the narcotics. Pearley used one of the law enforcement vehicles during the controlled buy. The officers placed a video camera and an audio transmitter in the vehicle. The officers conducted surveillance by listening to the audio transmitter when Pearley was no longer in sight.
¶ 4. Pearley testified that after he and the vehicle were searched, the officers followed him and:
[H]e drove down St. Paul Road and I seen [sic] Rabbit standing up under a[sic] oak tree, so I went down and made the loop and come [sic] in and parked, you know, where the video camera would catch him. He came up to me — -when I come [sic] up there I said “what’s up, you on,” and he said, “yeah, what you want.” I said “I want a forty,” that means forty dollars worth of crack cocaine. So he pulled out a little orange-looking pill bottle, unscrewed it, give [sic] me two rocks. I handed him forty dollars and I drove back to the pre-buy location, and at that time on the way back Agent Bright and them [sic] was [sic] behind me and they followed me all the way back to the pre-buy location.
¶ 5. When Pearley met with the officers at the pre-arranged location following the buy, he gave the substance to Officer McElveen who placed it in an evidence bag and gave it to Officer Bright. The substance was then sent to the Mississippi Crime Lab where it was later determined to contain cocaine.
¶ 6. On February 7, 2001, Byrd was indicted for the unlawful sale of cocaine. At a jury trial on April 12, 2001, Byrd denied having committed the crime and testified that he had been at his sister’s house on the afternoon of the alleged sale. Byrd was convicted of the unlawful sale of cocaine, and sentenced to a term of fifteen years in the custody of the Mississippi Department of Corrections, with the last seven years to be served on post-release supervision and ordered to pay a fine and other court costs.
ISSUES AND ANALYSIS
I.
Whether the trial court erred in allowing the identification of Byrd in the courtroom based on the pre-trial viewing of photographs of Byrd.
¶ 7. Byrd contends that the trial judge should not have allowed the in-court identification of him because of the improper pre-trial viewing of photographs. He maintains that Pearley viewed the photographs of him while they were “just laying” on the table during the trial and were not shown “in any sort of customary lineup” prior to trial.
¶ 8. This Court reviews a challenge to the admissibility of identification testimony by determining whether there is an *733 absence of credible evidence to support the finding. Jackson v. State, 807 So.2d 467(¶ 8) (Miss.Ct.App.2001).
¶ 9. A review of the transcript shows that Pearley identified Byrd in the following manner:
Q. Let me ask you this question. Did you know Mr. Byrd prior to this date?
A. Yes, sir.
Q. And for the record, do you see Mr. Byrd in the courtroom today?
A. Yes, sir.
Q. Would you identify him?
A. Right there by Mr. Jack Price.
¶ 10. There was no objection made at that time regarding the identification of Byrd. Pearley stated that he had seen Byrd prior to the incident; however, he did not know Byrd’s real name. Pearley indicated that he knew Byrd by the nickname of “Rabbit.” While the description Pearley gave to the officers of the seller directly after the buy did not include information about the person having a mous-tache or goatee, Pearley testified that it was Byrd whom he purchased the substance from and that he gave a description of Byrd at the end of the videotape.
¶ 11. Additionally, Pearley testified that he had not seen the videotape of the buy recently but had seen the photographs of Byrd on the table at trial. The jury also heard identification testimony from others naming Byrd as the person on the video involved in the transaction. At trial, Pear-ley’s identification of Byrd is described as follows:
Q. Have you seen any photographs of Mr. Byrd?
A. When?
Q. Recently.
A. Except for the ones right there on the table.
Q. Okay. Who showed you those?
A. Didn’t nobody show them to me. I saw them. They had them setting [sic] on the table.
[[Image here]]
Q. And you haven’t looked at any pictures?
A. No, sir.
Q. Haven’t looked at the video?
A. No, sir, not since the day it happened.
Q. And there is no doubt in your mind who is sitting over there at that table?
A. The guy I bought crack cocaine from. Rabbit.
Q. Rabbit?
A. Yes, sir.
¶ 12. There was no objection made following this testimony to suppress the identification on the ground that the in-court identification was tainted or improper due to a pre-trial look at photographs. To preserve an issue for consideration on appeal, a defendant must raise a timely objection. Longmire v. State, 749 So.2d 366(¶ 5) (Miss.Ct.App.1999). Having failed to raise a timely objection, this issue is procedurally barred. Id.
II.
Whether the verdict was against the weight and credibility of the evidence.
¶ 13. Byrd contends that because the in-court identification lacked credibility, the verdict was not supported by the evidence, and a directed verdict should have been granted.
¶ 14. The standard of review for this Court regarding the weight and credibility of evidence is stated as follows:
[W]e must, with respect to each element of the offense, consider all of the evidence — not just the evidence which supports the case for the prosecution — in *734 the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Sheffield v. State, 749 So.2d 123 (¶ 9) (Miss.1999). Byrd asserts that the evidence was not credible.
¶ 15. Byrd maintains that in viewing the video and seeing just one set of photographs of him “what fair-minded juror could reasonably find that Pearley’s in-court identification was not tainted?” At trial, the State placed several photographs of Byrd in evidence to support the testimony of Officer Mark. Byrd’s attorney objected to the photographs based on “best evidence.” The following discussion of that objection transpired:
BY MR. GOODWIN (for the State): Your Honor, I would like to have these marked as an exhibit to his testimony.
BY MR. PRICE (for the Defendant): Your Honor, we would object. The best evidence, we would submit, would be Mr. Byrd himself. I believe the jury has had ample opportunity to observe him, and they can decide for themselves without the benefit of a photograph.
BY MR. GOODWIN: The problem, Your Honor, is that they are going to have the video camera and photograph, and they’re not going to be able to take Mr. Byrd back to the jury room when they’re looking, and I think for practical purposes the best evidence is these photographs, because that’s what they will have in the jury room.
BY THE COURT: All right. I think the photographs have probative value for the point of identifying Mr. Byrd, so these photographs will be received into evidence as Exhibit S-2, A B and C[sic],
¶ 16. Although the photographs were received into evidence, they were not the sole basis for the identification of Byrd. Pearley testified, without contradiction that he knew Byrd by the nickname of “Rabbit,” and that he purchased the drugs from Byrd. There existed sufficient credible evidence in the record upon which the jury could have found Byrd guilty. This allegation is without merit.
¶ 17. This Court notes that the trial court sentenced Byrd to a term of fifteen years in the custody of the Mississippi Department of Corrections, to serve the first eight years and the last seven years to be served on post-release supervision. Pursuant to Miss.Code Ann. Section 47-7-37 (Rev.2000), a period of post-release supervision shall not exceed five years. Ellis v. State, 748 So.2d 130(¶ 12) (Miss.1999). This Court therefore notes as plain error that portion of the sentence which imposes a period of post-release supervision of seven years.
¶ 18. We therefore affirm the conviction, but reverse and remand for the limited purpose of correcting that portion of the sentence which requires post-release supervision for a period in excess of five years.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF WALTHALL COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH EIGHT YEARS TO SERVE AND $5,000 FINE *735 IS AFFIRMED. THAT PORTION OF THE SENTENCE IMPOSING SEVEN YEARS OF POST RELEASE SUPERVISION IS REVERSED AND REMANDED FOR CORRECTION OF SENTENCE CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WALT-HALL COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, AND CHANDLER, JJ, CONCUR. GRIFFIS, J., NOT PARTICIPATING.