MAXWELL, J„
for the Court:
¶ 1. Richard Ray Timmons was charged in the Circuit Court of Lauderdale County, Mississippi, with four counts of statutory rape, which stemmed from four separate allegations of sexual encounters with a fourteen-year-old girl. He was convicted on Count I of the indictment and found not guilty on the remaining three counts. He was sentenced to twenty years in the custody of the Mississippi Department of Corrections, with ten years suspended and five years of post-release supervision. On appeal Timmons claims: (1) the circuit court erred in limiting the scope of Timmons’s cross-examination of the victim, and (2) the verdict is against the overwhelming weight of the evidence.
¶ 2. Finding no reversible error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 3. In the summer of 2006, the parents of Christy Lewis and Rebecca Lewis owned a roofing business in Meridian, Mississippi.[1] At the time, Christy was fourteen, and Rebecca was ten. On July 16, 2006, the parents hired Timmons, a thirty-two-year-old roofer, to help with their family business. The parents allowed Tim-mons to stay in them home and sleep on a couch in them living room. Christy and Rebecca also regularly slept in the living room that summer because the air conditioning was not working in their bedrooms.
¶ 4. During a fishing trip around July 26 or 27, 2006, Rebecca witnessed Timmons *1024 inappropriately touch Christy. Christy later testified at trial that she and Timmons had only kissed on the fishing trip, but that Timmons had called her his girlfriend. The day after the fishing excursion, Tim-mons brought the two young girls to pick up Christy’s friend Gina Smith. Gina testified that Timmons asked her that day if she wanted to have a “threesome,” meaning she, Christy, and Timmons would have sex with one another, but Gina thought Timmons was kidding.
¶ 5. Around this time Christy’s mother became suspicious of Timmons’s relationship with Christy. Her suspicions grew when she found Timmons and Christy talking late one night. Nevertheless, the next weekend, the parents invited Tim-mons and his friend Samantha Stewart[2] on a trip with them to the casinos in Philadelphia, Mississippi.[3] After the casino trip, Christy’s mother confronted Christy. She asked Christy if she was involved with Timmons, and Christy came forward and admitted that she had a sexual relationship with him. After learning of the relationship, Christy’s parents fired Timmons.
¶ 6. Timmons later called Christy’s mother on at least two occasions to apologize for his actions and to profess his love for Christy. During these phone conversations, Timmons confessed he had engaged in both oral sex and sexual intercourse with Christy. At trial, Christy testified she had sex with Timmons on each of the charged dates, and she explained the nature of the various acts the two performed on one another.
¶ 7. During deliberation, the jury sent a question to the judge asking: “Is it permissible for the jury to find statutory rape on one of the dates only and on the other dates not guilty? Then one count of statutory rape? Do you need the date for one count?” Over defense counsel’s objection, the circuit judge responded:
You have been instructed to render a verdict on each of the four counts. Your verdict may be guilty or not guilty on each count. On each verdict, it is required to specify the count number which will identify the date of the alleged offense. Further explanation is not appropriate. See your previous form of the verdict instruction.
¶ 8. The jury continued to deliberate and later found Timmons guilty on Count I and not guilty on the remaining three counts.
DISCUSSION
I. Cross-examination of Christy
A. Relevance
¶ 9. Timmons first contends the circuit court erred in limiting his cross-examination of Christy. Before trial, Christy informed law enforcement officers that she believed Timmons may be sexually involved with other teenage girls. When defense counsel attempted to question Christy about her statement, the State objected on relevance grounds. The circuit judge sustained the State’s objection.
¶ 10. We review the circuit court’s relevancy ruling, limiting cross-examination, for abuse of discretion. Raiford v. State, 907 So.2d 998, 1002 (¶ 8) (Miss.Ct.App.2005) (citing Zoerner v. State, 725 So.2d 811, 813 (¶ 7) (Miss.1998)).
*1025 “Reversal is proper only where such discretion has been abused and a substantial right of a party has been affected.” Johnson v. State, 666 So.2d 499, 503 (Miss.1995) (citing Green v. State, 614 So.2d 926, 935 (Miss.1992); M.R.E. 103(a)). ‘“Relevant Evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” M.R.E. 401. “All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by [the Mississippi Rules of Evidence]. Evidence which is not relevant is not admissible.” M.R.E. 402.
¶ 11. During cross-examination, Christy provided the following explanation about her statement that Timmons was possibly having sex with other young females:
[Defense counsel]: So you thought they were having sex with each other?
[Christy]: Well, he would have her baby-sit J.J., and he would go over to his mom’s house with her there and still pay her to baby-sit.
[Defense counsel]: And you told the police without mentioning any names that this juvenile was also having sex — that [Timmons] was having sex with her?
[Christy]: I told them I wasn’t sure, but I thought there was a possibility.
[Defense counsel]: Okay. And you named another — another teenage female?
[Christy]: Yes, but she had told me that.
(Emphasis added).
¶ 12. The State objected to this line of questioning, claiming Christy’s statement about other juveniles was irrelevant. Tim-mons’s attorney claimed Christy’s “false allegations” were relevant. After dismissing the jury to hear more thorough arguments from both sides, the circuit judge offered the following reason for sustaining the State’s objection:
[Christy] suspected that there was a— and she believed. I don’t think that’s the same thing as filing a false report. That’s not what happened here. She was investigating. These officers were investigating someone who they suspected to be a serial offender with — sex offender with young ladies. One victim who they’re convinced is a victim mentions other possible contacts. That’s something that happens every day, and she doesn’t know, but she relates to law enforcement that [she suspects] that’s the case. I’m not going to — I think that’s not relevant here. I don’t think it rises to the level of something that you could cross-examine this witness about and in any way add to evidence that should be admissible or considered by the jury as to the facts in this particular case. I’m not going to allow you to get into that issue or cross-examine [Christy] about those reports. I don’t think those are relevant issues to any fact here.
(Emphasis added).
¶ 13. While the circuit judge determined Christy’s report to police was irrelevant, it appears from his ruling that he specifically found her responses were speculative in nature, and not intentionally false allegations. Mississippi Rule of Evidence 602 makes clear, “[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he [or she] has personal knowledge of the matter.” Informing an investigating officer of a suspicion or possibility about which one is admittedly “unsure” is quite different than making a knowingly-false allegation.
*1026 ¶ 14. We find it was within the circuit court’s discretion to find Christy had insufficient personal knowledge about the other encounters, and that her statement was too speculative to be deemed relevant for impeachment as a prior inconsistent statement under Mississippi Rule of Evidence 613(b). Furthermore, what Christy may have been told by another teenage girl was inadmissible hearsay. See M.R.E. 801, 802.
¶ 15. Accordingly, we find the circuit court did not abuse its discretion in prohibiting cross-examination regarding Christy’s statement about Timmons’s other possible sexual encounters with other teenage girls.
B. Confrontation Clause
¶ 16. Timmons next claims the circuit court violated his right to confront his accuser by limiting his cross-examination of Christy. He contends the United States Supreme Court’s decision in Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) supports this conclusion. In Van Arsdall, the Supreme Court held:
[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby “to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness.”
Id. at 680, 106 S.Ct. 1431 (emphasis added) (quoting Davis v. Alaska, 415 U.S. 308, 318, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)).
¶ 17. All criminal defendants have “a fundamental right implicit in the confrontation clauses of our state and federal constitutions to cross-examine witnesses testifying against [them].” Betts v. State, 10 So.3d 519, 523 (¶ 11) (Miss.Ct.App.2009). However, that right “does not allow cross-examination on any matter affecting the credibility of witnesses without restraint.” Id. Though cross-examination is ordinarily broad in scope, it is within the sound discretion and inherent power of the circuit judge to limit cross-examination to only relevant matters. Id. (citing Ellis v. State, 856 So.2d 561, 565-66 (¶ 10) (Miss.Ct.App.2003)).
¶ 18. We have already determined the testimony in question was not “otherwise appropriate cross-examination” material because of its speculative nature. Furthermore, general objections are insufficient to preserve alleged Confrontation Clause violations for appellate review. Briggs v. State, 16 So.3d 696, 698-99 (¶ 11) (Miss.Ct.App.2008). We note Timmons’s only response to the circuit court was that he was entitled to question Christy about what he deemed were relevant “false allegations.” He made no specific Sixth Amendment objection to the limitation of Christy’s testimony at trial or in his post-trial motion. Thus, his Confrontation Clause argument is procedurally barred. Id.
¶ 19. However, under the plain-error doctrine, “we can recognize obvious error which was not properly raised by the defendant on appeal, and which affects a defendant’s ‘fundamental substantive right.’ ” Neal v. State, 15 So.3d 388, 403 (¶ 32) (Miss.2009) (citing Smith v. State, 986 So.2d 290, 294 (¶10) (Miss.2008)). “The plain[-]error doctrine has a two-part test which requires: (i) an error at the trial level and (ii) such an error resulted in a manifest miscarriage of justice.” Stephens v. State, 911 So.2d 424, 432 (¶ 19) (Miss.2005) (citing Gray v. State, 549 So.2d 1316, 1321 (Miss.1989)). Even if we found the limitation of Timmons’s cross-examination of Christy was error, Timmons must *1027 show the exclusion resulted in a manifest miscarriage of justice.
¶ 20. Our supreme court has held “even errors involving a violation of an accused’s constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming.” Clark v. State, 891 So.2d 136, 142 (¶ 29) (Miss.2004) (quoting Riddley v. State, 777 So.2d 31, 35 (¶ 12) (Miss.2000)). In addition to Christy’s testimony about her various underage sexual encounters with Timmons, the State also offered letters written by Christy to Tim-mons, which were found in both Christy’s possession, and in Timmons’s bedroom in his mother’s home. Also, Timmons confessed to Christy’s mother that he had both oral sex and sexual intercourse with her minor daughter.
U21. To the extent Timmons contends he was deprived of the opportunity to inquire about Christy’s jealousy of Tim-mons’s relationships with other teenage girls, we note that Timmons’s counsel engaged in a lengthy and vigorous cross-examination of Christy on this topic. And Christy readily admitted during both direct examination and cross-examination that she was jealous of Timmons’s relationships with other young girls. Thus, any jealousy-related bias was already before the jury.
1122. Accordingly, we find any potential error from the limitation of Timmons’s cross-examination of Christy does not amount to a manifest injustice.
II. Weight of the Evidence
¶ 23. Timmons’s final argument is that the guilty verdict on Count I is against the weight of the evidence. In reviewing a challenge to the weight of the evidence, we will only disturb the verdict “when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Lamar v. State, 983 So.2d 364, 367 (¶ 5) (Miss.Ct.App.2008) (quoting Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005)). In conducting this analysis, the evidence must be viewed in the light most favorable to the verdict. Id. This Court “sits as a hypothetical thirteenth juror,” and “[i]f, in this position, the Court disagrees with the verdict of the jury, the proper remedy is to grant a new trial.” Id. (internal quotations omitted).
¶ 24. Timmons contends the State failed, to prove sexual interaction between Christy and him occurred on July 30, 2006. Timmons specifically takes issue with what he deems to be confusing and contradictory testimony from Christy. He claims the jury’s note, which asked: “Is it permissible for the jury to find statutory rape on one of the dates only and on the other dates not guilty? ... Do you need the date for one count?,” illustrates a lack of evidence of an encounter on July 30, 2006.
¶ 25. Before addressing the weight of the evidence, we first note the statutory-rape charge laid out in Count I was alleged to have occurred “on or about” July 30, 2006. Our supreme court has instructed that charging a defendant with committing a sexual crime “ ‘on or about’ a certain date, [is] ... sufficiently specific to put the defendant on notice of the charge against him and the date that the crime took placet.]” Davis v. State, 866 So.2d 1107, 1110 (¶ 11) (Miss.Ct.App.2003) (citing Daniel v. State, 536 So.2d 1319, 1326 (Miss.1988)). Thus, we find Timmons was on sufficient notice of the statutory-rape charge set forth in Count I. Furthermore, we point out that in response to the jury’s note, the circuit judge advised the jury:
You have been instructed to render a verdict on each of the four counts. Your verdict may be guilty or not guilty on each count. On each verdict, it is re *1028 quired to specify the count number which will identify the date of the alleged offense. Further explanation is not appropriate. See your previous form of the verdict instruction.
We also recognize that the circuit judge had previously instructed that the jury must find each element of Count I beyond a reasonable doubt, including that the offense was committed: “On or about July 30, 2006, in Lauderdale County, Mississippi.” Thus, the jury was properly instructed that it must consider each count separately and that it must find beyond a reasonable doubt that Timmons committed the statutory rape on or about the date charged in Count I. We presume the jury follows the instructions of the circuit judge when making its decision. Forbes v. State, 771 So.2d 942, 952 (¶ 33) (Miss.Ct.App.2000) (citing Reynolds v. State, 585 So.2d 753, 755 (Miss.1991)). This issue is without merit.
¶26. Timmons’s argument about the contradictory evidence is also unpersuasive. He claims Christy’s testimony that the two were together at her parent’s home “the whole day” on July 30 conflicts with her later statement that the casino trip occurred that same day. Timmons also points out that his mother provided an alibi of sorts — that Timmons spent the entire day of July 30 with her and was in his bed at her home the next morning. As we approach Timmons’s argument about conflicting evidence, we are reminded, it is the function of the jury to weigh the evidence, evaluate witness credibility, and determine which witnesses are to be believed. Thomas v. State, 14 So.3d 812, 823 (¶ 37) (Miss.Ct.App.2009) (citing Ford v. State, 737 So.2d 424, 425 (¶ 8) (Miss.Ct.App.1999)).
¶ 27. We find Christy’s testimony that the first sexual encounter occurred on July 30 and that it occurred on the day of the casino trip does not necessarily contradict her testimony that the casino trip took place either July 30 or 31. Furthermore, this Court has previously held a child victim’s variance “when pressed for specific dates of when various sexual acts occurred is of little consequence.” Grimes v. State, 1 So.3d 951, 956 (¶ 14) (Miss.Ct.App.2009). Even so, the circuit court instructed that the State must prove beyond a reasonable doubt that the offense charged in Count I occurred “on or about July 30,” and we find Christy’s testimony was sufficiently specific to prove this necessary element. As to Timmons’s alibi, we note the circuit court granted an alibi-defense instruction, but the jury obviously rejected it, as it was free to do.
¶ 28. Considering the evidence in the light most favorable to the verdict, we find Timmons’s conviction on Count I is not contrary to the overwhelming weight of the evidence.
¶ 29. For these reasons, we affirm Tim-mons’s conviction and sentence.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF STATUTORY RAPE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH TEN YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION AND TO PAY A $2,000 FINE AND $1,000 TO THE CHILDREN’S TRUST FUND IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.

. To protect the confidentiality of minors, we substitute fictitious names for their actual names.

. Samantha is a teenage girl, the same age as Christy, who baby-sat for Timmons's child.

. The date of the casino trip was disputed at trial. The mother reported the trip occurred on July 27, 2006, but Christy testified it was either July 30 or 31. A photo booth picture of Christy and Timmons taken during the vacation was dated July 31, 2006.